IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAUL SERNA CARRIO,

    Plaintiff,

v.

THE APOLLO GROUP a/k/a
UNIVERSITY OF PHOENIX; SHANE
CLEM; and JUDY BULLOCK,

    Defendants.

CIVIL ACTION FILE

NO. 1:07-CV-1814-BBM

**O R D E R**

This matter is before the court on the Final Report and Recommendation of the Magistrate Judge (the "R&R") [Doc. No. 48]. In the R&R, the Magistrate Judge recommends that the court grant the Motion for Summary Judgment [Doc. No. 34] filed by Defendants The Apollo Group a/k/a University of Phoenix ("UOP"), Shane Clem ("Mr. Clem"), and Judy Bullock ("Ms. Bullock") (collectively "Defendants"). Plaintiff Paul Serna Carrio ("Mr. Carrio") has filed Objections to the R&R [Doc. No. 49], which the court considers on a *de novo* basis.

**I.**    **Factual and Procedural Background**

In the R&R, the Magistrate Judge included a detailed recitation of the facts. (R&R 2-13.) Because neither side has objected to the Magistrate Judge's account of the facts, the court will adopt it for the purposes of this Order.

The relevant procedural history of the case is briefly summarized as follows. Mr. Carrio filed this lawsuit on August 1, 2008. He asserts that as a result of events taking place during and subsequent to an Employee Appreciation Day, held by his employer UOP, he was subjected to retaliation, discriminatory discharge, disparate treatment, and a hostile work environment in violation of 42 U.S.C. § 1981, as well as intentional infliction of emotional distress in violation of state law. Mr. Carrio requests the following forms of relief: (1) a declaratory judgment that the conduct complained of is unlawful and in violation of 42 U.S.C. § 1981; (2) an order that Defendants institute and carry out policies, practices and programs that provide equal employment opportunities for all minorities; (3) back pay (including interest and benefits); (4) compensatory damages; (5) exemplary and punitive damages; (6) attorneys' fees and costs; (7) pre-judgment and post-judgment interest; and (8) any other further legal and equitable relief as the court deems necessary, just and proper. (Compl. 21-22).

On October 3, 2008, the Defendants filed a Motion for Summary Judgment on all counts contained in Mr. Carrio's Complaint. In the R&R, the Magistrate Judge recommended that the Defendants' Motion for Summary Judgment be granted in its entirety. (R&R 1.)

## II. **Legal Standard**

As set forth above, the court reviews *de novo* a party's objections to the R&R. See Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990); 28 U.S.C. § 636(b)(1). Where no objections to the R&R have been stated, the court reviews the R&R for clear error. Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (Story, J.) (citing HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005)); Chamblee v. Schweiker, 518 F. Supp. 519, 520 (N.D. Ga. 1981) (O'Kelley, J.). Clear error review asks if, "after viewing all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" HGI Assocs., 427 F.3d at 873 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

Summary judgment is appropriate only when the pleadings and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute over a fact will preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Although in considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," id. at 255, the nonmovant must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Indeed, the nonmovant must present affirmative evidence beyond mere allegations to show that a genuine issue of material fact does exist. Anderson, 477 U.S. at 256-57. Furthermore, the court must evaluate the evidence "through the prism of the substantive evidentiary burden" at trial. Anderson, 477 U.S. at 254.

### III. Analysis

Mr. Carrio raises three issues in his Objections to the R&R. He first argues that in analyzing the § 1981 retaliation claim, the Magistrate Judge erred in failing to find an adverse employment action because the wrong legal standard was used. Mr. Carrio next asserts that the reasons set forth by the Defendants for firing him were a mere pretext. Finally, Mr. Carrio argues that the Magistrate Judge erred in recommending a grant of summary judgment for his hostile work environment and intentional infliction of emotional distress claims. The court addresses each of these objections in turn.

### A. Adverse Employment Action

Mr. Carrio first argues that in analyzing whether he had established a prima facie case for retaliation in violation of 42 U.S.C. § 1981, the Magistrate Judge erred by using the wrong standard to determine whether Mr. Carrio had suffered an adverse employment action. In the R&R, the Magistrate Judge first discussed the burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), used to evaluate a claim of retaliation in violation of § 1981. This requires that (1) the plaintiff first establish a prima facie case; (2) the defendants then articulate a legitimate, non-discriminatory reason for their action; and (3) the plaintiff must then show that the defendants' articulated reason is merely a pretext for retaliation. (R&R 16.) In establishing a prima facie case of § 1981 retaliation, the plaintiff must show "(1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was caused by his engaging in protected activity." (Id. at 17) (footnote omitted) (citing Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008)).

Regarding the second requirement, that the plaintiff demonstrate he suffered an adverse employment action, Mr. Carrio argues that "[t]he magistrate . . . employed the wrong standard that was set by the 11th Circuit prior to the Supreme Court cases of Burlington Northern & Santa Fe Ry. v. White[,] 548 U.S. 53 (2006) and

Crawford v. Carroll, 529 F.3d 961 (11th Cir. 200[8])." (Pl.'s Objection to the R&R 3.) Specifically, Mr. Carrio asserts that "[t]he test is whether the action would have been materially adverse to a reasonable employee. This means actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (Id.) (citing Burlington N., 548 U.S. at 68) (internal quotations omitted). He states that "[t]he magistrate completely failed to address these cases and simply concluded that placing an employee on administrative leave does not constitute an adverse employment action as a matter of law." (Id. at 3-4.) Mr. Carrio also argues that "[t]he real question[] the Magistrate should have asked in this matter was whether under the circumstances of this case a reasonable worker [might] have been dissuaded from making or supporting a charge of discrimination and whether the Plaintiff's administrative leave was materially adverse as a result." (Id. at 4.) Mr. Carrio then goes on to describe the alleged adverse employment actions that he suffered on account of his having engaged in statutorily protected activity, and concludes that "the Court should disregard the Magistrate's recommendation and employ the standard set forth in Burlington." (Id. at 5.)

Mr. Carrio's first objection to the R&R is without merit. In determining whether Mr. Carrio had sufficiently established that he suffered an adverse employment action, the Magistrate Judge used *precisely the same standard* that Mr.

Carrio advocates in his Objections to the R&R. The R&R began by noting that "'not all conduct by an employer negatively affecting an employee constitutes an adverse employment action.'" (R&R 18) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001)). It then stated that "a plaintiff must show that he suffered an action which a reasonable employee would find 'materially adverse,' that is, an action harmful to the point that it 'could well dissuade a reasonable worker from making or supporting a charge of discrimination'." (R&R 18-19) (citing Burlington N., 548 U.S. at 57). Burlington Northern was decided by the Supreme Court in 2006 and remains good law. The R&R continued in its analysis, finding that Mr. Carrio's allegations of (1) an argument with Mr. Clem; (2) being sent home on paid administrative leave for the day; and (3) being placed on paid administrative leave pending an investigation, did not constitute an adverse employment action pursuant to well-established law.[1] Because the Magistrate Judge appropriately used the Burlington Northern standard, which Mr. Carrio

---

[1] The cases cited for these conclusions were decided post-Burlington Northern, and many of them cite to the Burlington Northern standard. In any event, although the Magistrate Judge found Mr. Carrio's allegations involving (1) a confrontation with Mr. Clem and (2) forced paid administrative leave, did not constitute adverse employment action, he did find that Mr. Carrio's allegations of termination satisfied the standard for adverse employment action pursuant to the Burlington Northern standard, such that Mr. Carrio established a prima facie case for a § 1981 retaliation claim.

acknowledges to be binding precedent, the court finds that the Magistrate Judge was correct in conducting his review of the alleged adverse employment actions suffered by Mr. Carrio pursuant to the Burlington Northern standard.

For these reasons, the court rejects Mr. Carrio's objections, and adopts the portion of the Magistrate Judge's holding that Mr. Carrio demonstrated adverse employment action solely through his termination from UOP, thereby establishing a prima facie case of § 1981 retaliation.

**B.  Pretext**

Mr. Carrio next argues that "[i]nstead of correctly concluding that Defendants['] actions were discriminatory and retaliatory, the magistrate found that defendant's proffered reason for firing Plaintiff was not a mere pretext but a legitimate non-discriminatory reason to fire Plaintiff." (Pl.'s Objection to the R&R 6.) He acknowledges that pursuant to the McDonnell-Douglas burden shifting test, he was then required to point to evidence that the reasons given for firing him were a mere pretext. Mr. Carrio asserts, however, that he overcame his burden of establishing pretext.[2]

---

[2] Although not expressly stated, the court understands Mr. Carrio's argument to be an objection to the Magistrate Judge's finding that Mr. Carrio did not sufficiently demonstrate pretext.

First, the Magistrate Judge properly conducted the analysis pursuant to the McDonnell-Douglas framework. Contrary to Mr. Carrio's assertions,[3] upon finding that the plaintiff has established a prima facie case of § 1981 retaliation, "the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for their action." (R&R 16) (citing Berman v. Orkin Exterminating Co., 160 F.3d 697, 701 (11th Cir. 1998)). The Defendants asserted that Mr. Carrio was "terminated because he failed to return to work after the expiration of his paid administrative leave," (R&R 27), and the Magistrate Judge rightly concluded that this explanation constituted a legitimate, non-retaliatory reason for Mr. Carrio's termination. See Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (the defendants' burden to articulate a legitimate, non-discriminatory reason for their action is "exceedingly light.").

Recognizing that the burden shifts back to him, Mr. Carrio asserts that he overcame his burden of establishing pretext "by showing that Defendants schemed to fire him prior to placing him on administrative leave." (Pl.'s Objection to the R&R 6.) He asserts that Ms. Bullock asked Human Resources to look into Mr. Carrio's employment application to see if anything was falsified, and that the

---

[3]Mr. Carrio often conflates the distinct requirements of (1) a legitimate non-discriminatory reason and (2) pretext. (See, e.g., Pl.'s Objection to the R&R 6, 8.)

Defendants attempted "to get Plaintiff's former supervisor, Victor Evans ("Mr. Evans"), to falsify documents in order to justify Defendant Bullock's negative employee evaluation." (Id. at 7.)[4] Mr. Carrio also complains that Ms. Bullock told him that "if he filed an EEOC complaint he would be written up," id.,[5] and likewise points to both the argument he had with Mr. Clem and his subsequent forced administrative leave. Finally, Mr. Carrio cites to internal emails and Mr. Evans's affidavit, which he says "show direct evidence of efforts by Defendants to get Plaintiff fired after he filed his EEOC complaint and complained to the press." (Id.)

Once an employer has proffered a legitimate, non-retaliatory reason for the adverse employment action, "[t]he plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a

---

[4]The details of this allegation are as follows: Mr. Carrio was instructed to return from administrative leave on December 21, 2005, and when he failed to return, he was terminated effective that date. The record includes an affidavit from Mr. Evans which states that he was contacted by the UOP Human Resources department in the late fall of 2005 and asked to sign a document attesting to the fact that he had participated in Mr. Carrio's 2005 performance review. Mr. Evans states that did not sign the document because he had not, in fact, participated in Mr. Carrio's 2005 performance review.

[5]This allegation is made by Mr. Carrio in his own Affidavit. He testifies that on October 4, 2005 he told Ms. Bullock that he was "thinking of going to the EEOC," and Ms. Bullock told him that she would write him up if he "pursued the matter with the EEOC." (Carrio Aff., ¶ 8.) Mr. Carrio points to this incident as evidence of pretext. However, this evidence does nothing to call into question the reason given for Mr. Carrio's termination, which was his failure to return from administrative leave on December 21, 2005, as he had been directed to do.

pretext for prohibited, retaliatory conduct." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). As the Magistrate Judge correctly noted, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). This means that the plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find all of those reasons unworthy of credence'." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1333 (11th Cir. 1998) (citation omitted). Importantly, "[u]nder Eleventh Circuit law, a plaintiff establishes pretext by showing that the employer could not have honestly believed the reason for terminating h[im]." Hayes v. City of Newnan, No. 3:05-CV-102-JOF, 2007 WL 2765555, at *31 (N.D. Ga. Sept. 20, 2007) (Forrester, J.).

The court agrees with the Magistrate Judge's conclusion that Mr. Carrio has failed to produce sufficient evidence to create a genuine issue of material fact that Defendants' reason for terminating him was a pretext for retaliation. First, the evidence demonstrates that Mr. Carrio was informed he would be terminated if he did not return to work from his administrative leave as of December 21, 2005 (see Dep. of Paul S. Carrio at 162:8-15, Aug. 4, 2008; Dep. of Judy Bullock, Aug. 6, 2008

("Bullock Dep."), Ex. 18), and there is no dispute that he did not return as of this date. (See Pl.'s Objection to the R&R 9-10; Bullock Dep., Ex. 17.)[6] Further, none of the evidence that Mr. Carrio provides calls into question the veracity of Defendants' statement that he was fired for failing to return to work after the expiration of his paid administrative leave. See Hayes, 2007 WL 2765555, at *31. Although Mr. Carrio no doubt disagrees with the Defendants' actions—including inquiring into his employment application, attempting to get the signed statement from Mr. Evans regarding Mr. Carrio's 2005 performance review, threatening to write him up if he filed an EEOC complaint, and terminating him after he filed an EEOC complaint—the fact that these things may have occurred does nothing to call into

---

[6]Mr. Carrio cites to Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), for the proposition that "constructive discharge eliminates Defendants['] affirmative defense of job abandonment," in order to excuse his failure to return to work. (Pl.'s Objection to the R&R 10.) In no way does this case support Mr. Carrio's argument. In Ellerth, the Supreme Court addressed whether, under Title VII of the Civil Rights Act of 1964, an employee who refused the unwelcome and threatening sexual advances of a supervisor, but suffered no adverse tangible job consequences, could recover against the employer without showing that the employer was negligent or otherwise at fault for the supervisor's actions. Ellerth, 524 U.S. at 746-47. The Court found, *inter alia*, that when no tangible employment action is taken, "a defending employer may raise an affirmative defense to liability or damages." Id. at 765. However, it stated that "[n]o affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge." Id. This holding is wholly unrelated to Mr. Carrio's argument that he was not required to return to work even though he was told to do so, and therefore is not persuasive.

doubt the Defendants' specific proffered reason for his termination. See Standard, 161 F.3d at 1333 (requiring that the plaintiff "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find all of those reasons unworthy of credence'.") (citation omitted). Because Mr. Carrio has failed to demonstrate pretext, the court concludes that the Magistrate Judge was correct in recommending summary judgment be granted on his § 1981 retaliation claim.[7] It therefore adopts the portion of the Magistrate Judge's R&R that recommends dismissal of Mr. Carrio's § 1981 retaliation claim.

### C. Hostile Work Environment & Intentional Infliction of Emotional Distress Claims[8]

---

[7] Mr. Carrio also argues that the Defendants "have made no effort to 'proffer' or explain a non-discriminatory reason for placing Plaintiff on administrative leave," asserting that they instead argue only that this did not constitute an adverse employment action. (Pl.'s Objection to the R&R 8.) Mr. Carrio concludes that because of this, his § 1981 retaliation claim based on his administrative leave placement must survive summary judgment. However, as the court has determined that the Magistrate Judge was correct in finding that Mr. Carrio's placement on paid administrative leave (both for the day and while an investigation was pending) did not constitute an adverse employment action, it is unnecessary to determine whether the Defendants in fact offered a legitimate, non-discriminatory reason for their actions. See Crawford, 529 F.3d at 970 (requiring that the plaintiff first establish a prima facie case before the burden shifts to the defendants).

[8] Pursuant to 28 U.S.C. § 1367, the court elects to retain supplemental jurisdiction over the state law intentional infliction of emotional distress claim.

Finally, Mr. Carrio states that he "further objects to the Magistrate's decision to grant summary judgment as to Plaintiff's claims for hostile work environment and intentional infliction of emotional harm, and relies on [his] brief in opposition to Defendants['] Motion for Summary Judgment in support of this opposition." (Pl.'s Objection to the R&R 11.) Because Mr. Carrio has not listed any actual objections to the R&R, the court reviews this portion of the R&R under the clear error standard. See Tauber, 438 F. Supp. 2d at 1373-74; see also Fed. R. Civ. P. 72(b)(2) (requiring "specific written objections to the proposed findings and recommendations."). After having conducted a review, the court finds no clear error by the Magistrate Judge. See HGI Assocs., 427 F.3d at 873. The court thus adopts the portion of the Magistrate Judge's R&R recommending dismissal of Mr. Carrio's hostile work environment and intentional infliction of emotional distress claims.

The court has also reviewed the remaining portions of the Magistrate Judge's R&R for which there were no objections filed, and found no clear error. See id. It therefore adopts the remaining portions of the R&R recommending grant of summary judgment for Mr. Carrio's discriminatory discharge and disparate treatment claims made pursuant to § 1981.

**IV. Summary**

For the foregoing reasons, the court ADOPTS the Final Report and Recommendation of the Magistrate Judge [Doc. No. 48]. Defendants' Motion for Summary Judgment [Doc. No. 34] is GRANTED. This case is hereby DISMISSED.

IT IS SO ORDERED, this 7th day of August, 2009.

s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE